1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10

11    BRONWEN WALTERS,                        CASE NO. 15-5651 RJB

                    Plaintiff,                ORDER ON MOTION TO DISMISS
12                                            PLAINTIFF'S FIRST AMENDED
         v.                                   COMPLAINT
13
      WALDEN UNIVERSITY, LLC, and
14    LAUREATE EDUCATION, INC.,

15                  Defendant.

16
            This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's First
17
      Amended Complaint.  Dkt. 13. The Court has considered the pleadings filed in support of and in
18
      opposition to the motion and the file herein.
19
            In this disability discrimination case, Plaintiff files suit against Walden University, LLC
20
      ("Walden University") and its parent company, Laureate Education, Inc. ("Laureate"), claiming
21
      that while she was a student at Walden University, Defendants violated the Rehabilitation Act,
22
      29 U.S.C. § 701, *et seq*., the Washington Law Against Discrimination, RCW 49.60, *et seq.,*
23
      ("WLAD"), the Washington Consumer Protection Act, RCW 19.86, *et seq.,* ("CPA"), and
24

1  intentionally inflicted emotional distress on her.  Dkt. 7.  Defendants now move for dismissal of

2  Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim.

3  Dkt. 13.  For the reasons set forth below, Defendants' motion (Dkt. 13) should be denied, in part,

4  and renoted, in part.

5                      I.         **BACKGROUND FACTS AND PROCEDURAL HISTORY**

6           **A.  BACKGROUND FACTS FROM FIRST AMENDED COMPLAINT**

7        According to the First Amended Complaint, Plaintiff holds a Bachelor of Arts in

8  Industrial Design, and earned a Master of Arts in Applied Psychology in 1996.  Dkt. 7*, at 3*.

9  Plaintiff was diagnosed with Major Depressive Disorder in 1989, and Attention Deficit Disorder

10  ("ADD") co-morbid with Dysthymia in 1999.  *Id.*  She sought treatment, participated in therapy,

11  and received medication for these conditions.  *Id.*

12        Defendant Walden University is a private university that receives federal funds and

13  whose classes are conducted primarily online.  Dkt. 7, at 2.  Plaintiff contacted Walden

14  University in 2012, expressed interest in a Ph.D. program, but raised concerns "about how the

15  online format would work for her given her disability diagnoses."  *Id.*  Plaintiff asserts that an

16  enrollment advisor from Walden University assured her that "that the online format offered

17  flexibility and . . . that she could work at her own pace."  *Id.*

18        She asserts that based on these assurances, Plaintiff enrolled in Walden University's

19  online Social Psychology program as a doctoral student in March of 2012. Dkt. 7, at 2.   She

20  attended until September of 2012.  *Id.*  Plaintiff alleges in her First Amended Complaint that she

21  was "quickly overwhelmed by the unsustainable pace and volume" of the tasks required.  *Id., at*

22  4.  She ended the first quarter on academic probation in June of 2012.  *Id.*

23

24

1    Plaintiff began her second quarter in July 2012, and was shortly removed from academic

2  probation. *Id.,* at 4-5.  On July 28, 2012, she submitted a disability accommodation request. *Id.,*

3  at 5. Plaintiff alleges that she sought accommodations for her ADD and chronic depression. *Id.*

4  She maintains that she "explained in detail her struggle with the course work and rigid

5  deadlines." *Id.*  Her Amended Complaint alleges she wrote:

6        I am asking for flexibility in the submission dates.  I need to participate in the
         weekly discussions without the rigidity of submissions on certain days of the
7        week – I have submitted before due dates. I need a grace period for assignments
         due dates.  I believe I can be successful with these accommodations.  And, prior
8        late penalties incurred this quarter lifted and points restored.

9  *Id.*

10    The First Amended Complaint alleges that on August 6, 2012, the Disability Services

11  Office responded by email, giving her additional time as an accommodation.  *Id.*  This email,

12  which is attached to Defendants' motion, is appropriate for consideration on their motion to

13  dismiss without converting the motion to a summary judgment motion because it is incorporated

14  by reference in Plaintiff's First Amended Complaint and Plaintiff does not dispute its

15  authenticity.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir 2003); *Knievel v. ESPN,* 393 F.3d 1068,

16  1076 (9th Cir. 2005)(incorporation by reference applies where "plaintiff's claims depend on the

17  contents of a document, the defendant attaches the document to its motion to dismiss, and the

18  parties do not dispute the authenticity of the document, even though plaintiff does not explicitly

19  allege the contents of that document in the complaint"). In the email, Walden University grants

20  Plaintiff "1 extra day for discussion-related assignments, 3 extra days for short

21  papers/applications, and 7 days for larger papers and term-long projects."  Dkt.15-1, at 2.  It also

22  noted that, "Walden's weekly modular format is flexible enough to accommodate most

23  disability-related issues.  This extra time is offered as a safety net should you have excessive or

24

ORDER ON MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT- 3

1    unexpected disability-related issues during the term and is not meant to be used on a routine

2    basis." Dkt. 7, at 5.  The email continues:  "The learning outcomes associated with this course

3    are dependent on timely interaction among students, so [the University] encourage[s] [Plaintiff]

4    to manage [her] foreseeable disability-related issues by working ahead of schedule to avoid using

5    extra time and possibly falling behind the weekly pace."  *Id.*  The email also provides "let us

6    know if you need additional accommodations."  *Id.*  Plaintiff does not allege that she requested

7    any additional accommodations from the Disability Services Office.

8         Plaintiff states in her Amended Complaint that in the second quarter, her research

9    methods professor, Dr. Kimberley Cox, was also "unnecessarily rigid," in her implementation of

10   Plaintiff's extra-time accommodation.  Dkt. 7, at 6.  Dr. Cox rejected Plaintiff's "foundational

11   research paper exploring the effects of ADHD on student outcomes in online learning," and

12   forced Plaintiff to redo the assignment.  *Id.*  Plaintiff asserts that Dr. Cox did not require any

13   other student to do the assignment again.  *Id.*  Plaintiff maintains that "due to the cascading

14   timeline of assignments – whereby each subsequent assignment relied on the prior assignment's

15   completion," Plaintiff fell further and further behind.  *Id.*  She asserts that Dr. Cox penalized her

16   for her late assignments, altered the times and dates assignments were turned in, and deducted

17   points from work that had already been graded.  *Id.*  Plaintiff maintains that she attempted to

18   resolve her "concerns" with Dr. Cox directly, with no avail.  *Id., at* 7.

19        According to the First Amended Complaint, Plaintiff emailed Dr. Anthony Perry, the

20   head of Walden University's Social Psychology Department, requesting a phone conference to

21   address her "concerns."  *Id.*  Dr. Perry responded via email.  *Id.*  Defendants attach emails

22   between Plaintiff and Dr. Perry, dated September 4, 2012, those emails provide:

23        Hello Dr. Perry:

24

My name is Bronwen Walters. . .  I am in the social psychology Ph.D. program. This is the third quarter of my first experience with an on-line university.  It has been interesting.

I spoke with Ainsley Stefanick this morning, and she suggested I contact you regarding my experience with the Research Theory, Design and Methods (RSCH – 8100Y-18) course I just completed.  Unfortunately, 6 weeks into quarter the original instructor, Dr. Rogers, had to take a leave.  I do hope his health is improving.

I would appreciate the opportunity to talk with you at your earliest convenience about that experience.  Can we make an appointment to talk?

Thank you.

Dkt. 14-1, at 6.  Dr. Perry responds via email with: "Hello Bronwen, Yes, I know about Dr. Rogers.  I asked Dr. Cox to take over the course.  What is your question/concern?"  Dkt. 14-1, at 5.

According to the First Amended Complaint, at this point (the third quarter), Plaintiff had two classes, one with Dr. Peggy Gallaher and one with an adjunct professor, Dr. Rasmussen (whose first name is not in the First Amended Complaint). *Id.*  In the First Amended Complaint, Plaintiff asserts that Dr. Gallaher was "antagonistic and overly-rigid" in her implementation of Plaintiff's time accommodations.  *Id.*  Plaintiff felt that Dr. Gallaher responded to Plaintiff's online posts (which were required for the class) with "criticism and antagonism," and praised other students.  *Id.*

Plaintiff alleges that on September 8, 2012, she again emailed Dr. Perry to report the "disability harassment by both Dr. Cox and Dr. Gallaher." *Id.* at 8.  Plaintiff's First Amended Complaint states that in the email, she "gave a brief overview of her concerns and asked Dr. Perry that her coursework and evaluations be reviewed by an unbiased, independent scholar and that her professors agree to respond to her coursework in a fair and civil manner."  *Id.*

Defendants attach the email to their motion, it provides in full:

ORDER ON MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT- 5

Hello Dr. Perry,

I was hoping to talk with you in person, as my concern is and has been very troubling.

I had the sense that I was being treating [sic] unfairly by Dr. Cox because I registered with Disability Services.  I have ADD and provided documentation substantiating the diagnosis.  After reviewing the grading history, course documentation, and my course work, my attorney believes I was not only blatantly discriminated against, I was maliciously discriminated against.  To make matters worse, it appears Dr. Gallaher is adopting a similar attitude as per her responses on the discussion board.  I will be candid with you, I am disheartened, disappointed and frustrated.  Dr. Cox's and Dr. Gallagher's behaviors have presented such distractions, my performance in both courses has been compromised in the first week.  My attorney believes there is a pattern of discrimination in your department, and that it could be systemic.  She asked me how I would like to proceed.

I prefer not to proceed further, but said I would give you the opportunity to consider how this can be managed without legal intervention.

I ask that my work for USW1.FS.201270:  RSCH-8100-18/RSCH-8100Y-18/RSCH-6100Y-18-Research Theory2012 Summer Qtr 06/04-08/26-PT1 be reviewed in total, by an unbiased, independent scholar.  I am quite confident they will agree that a B grade is not appropriate for the caliber of work submitted using the grading rubric and the course information.  Additionally, I ask that Dr. Gallagher agree to respond to my posts, and evaluate my coursework in a fair and civil manner or that her evaluations are reviewed by an unbiased, second party.

It is quite regrettable that I have been put in this position.  I am adverse to conflict.  But, I am intolerant of discrimination, of any kind.  I await your response.

Dkt. 14-1, at 4-5.

Plaintiff alleges that Dr. Perry responded at 7:03 p.m. by email that provided:  "I would caution you regarding your comments about Dr. Cox and Dr. Gallaher.  Making disrespectful, inappropriate, and unprofessional comments about instructors/staff is a violation of the student code of conduct."   Dkt. 7, at 8.  Defendants also attach this email to their motion, it further provides:

1    You have not presented any evidence that you have been discriminated
2    against.

3    However, if you believe there was an error in your final grade (or on
     specific assignments) in RSCH 8100 you can submit a grade appeal and provide
     justification for any type of grade change.  Dr. Cox was not the instructor in Week
4    1 of RSCH 8100.  How could Dr. Cox impact your performance in Week 1 when
     she was not the instructor?

5
     You mentioned you contacted Disability Services.  Has Disability Services
6    recommended any type of accommodations for you in your course?  If so, on
     what date did they make those recommendations?  If you received a letter from
7    Disability Services, please forward that to me.

8    What course are you in with Dr. Gallagher?  I assume you are referring to
     a course in the current term (Fall 2012).  What exactly is your concern with Dr.
9    Gallaher?

10   If you would like to schedule a call for sometime next week please let me know.
     If you wish to submit a grade appeal you will need to contact advising.

11   Dkt. 14-1, at 3-4.

12   Plaintiff asserts that Dr. Perry emailed her at 7:36 p.m., stating that she "left out quite a

13   bit of information from [her] previous email."  Dkt. 7, at 8.  Defendants also attach this email to

14   their motion, it further provides:

15
     Dr. Cox forwarded the letter from Disability Services.  The letter was
16   dated August 7, and as such your accommodations for extra time applied to work
     starting in Week 10 and going forward.  Despite this, Dr. Cox allowed you to
17   submit your Wekk [sic] 8 and 9 assignments without a late penalty (if you
     submitted them by August 12 – I read Dr. Cox's email to you).  In addition, you
18   emailed Dr. Cox on August 27th asking her if she would "award enough points"
     for you to receive a "B" and continue your education.

19
     If you would still like to schedule a phone [call] please let me know.
20
     Dkt. 14-1, at 3.

21   Plaintiff maintains that Dr. Perry emailed her again at 12:00 a.m.  Dkt. 7, at 8.

22   (Defendants attach an additional email from Dr. Perry to Plaintiff, but it was sent at 10:01 p.m.,

23   not at 12:00 a.m. It is unclear if this is the email to which Plaintiff refers.)

24

ORDER ON MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT- 7

1    Plaintiff alleges that she became concerned that she might be charged with a violation of

2 the student code of conduct, face disciplinary action, and/or lose her financial aid. *Id.*, at 8-9.

3 She states that she responded to Dr. Perry with a one-line email thanking him for his response.

4 *Id.*, at 9.

5    In September 2012, Plaintiff stopped attending her third quarter classes. *Id.* Walden

6 University eventually dropped Plaintiff from her classes. *Id.*

7    Plaintiff asserts that as a result of this experience, she suffered a severe depressive

8 episode, her student loan debt went into default, and she has not been able to hold consistent

9 employment. *Id.* Plaintiff makes a federal claim for violations of the Rehabilitation Act. *Id.*

10 She also asserts claims under Washington's WLAD, CPA, and for intentional infliction of

11 emotional distress. *Id.* She seeks damages, attorney's fees, and costs. *Id.*

12   **B.  PROCEDURAL HISTORY AND INSTANT MOTION TO DISMISS**

13   Plaintiff filed her case on September 3, 2015, and filed the First Amended Complaint on

14 September 8, 2015. Dkt. 1.

15   Defendants now file a motion to dismiss the First Amended Complaint. Dkts. 13 and 17.

16 Defendants argue that the claims asserted against Laureate should be dismissed because Plaintiff

17 has wholly failed to plead any facts against it that would entitle her to relief. *Id.* Defendants

18 move to dismiss Plaintiff's claims under the Rehabilitation Act because Plaintiff has not alleged

19 sufficient facts that she was discriminated against solely because of her disability. *Id.* They

20 further argue that to the extent Plaintiff seeks monetary relief for her Rehabilitation Act claims,

21 those claims should be dismissed because she has not, and cannot, allege sufficient facts that

22 they were deliberately indifferent or intentionally discriminating against her. *Id.* They argue that

23 her retaliation claim under the Rehabilitation Act should be dismissed because she has not shown

24

1 that Walden University took an adverse action against her or a causal link between an adverse

2 action and protected activity.  *Id.*  Defendants argue that Plaintiff's WLAD claim should be

3 dismissed because Walden University accommodated Plaintiff and she failed to allege that her

4 disability was a substantial factor in any discrimination.  *Id.*  Defendants assert that Plaintiff's

5 claim for intentional infliction of emotional distress claim should be dismissed because she has

6 not pled conduct that is "extreme" or "outrageous."  *Id.*  Defendants argue that her claim for

7 violation of the CPA is derivative of her other claims, and because those claims should be

8 dismissed, so should her CPA claim.  *Id.*

9   Plaintiff responds and opposes the motion.  Dkt. 16.  As to Laureate, Plaintiff maintains

10 that she has stated claims against Laureate where she was fraudulently induced to enroll in

11 Defendants' program for their financial benefit, and so should be able to pierce the corporate

12 veil, and hold Laureate liable.  *Id.*  Plaintiff argues that she has alleged a Rehabilitation Act claim

13 because Defendants penalized her, forced her to re-do work, and criticized her due to her

14 learning disabilities.  *Id.*  She asserts that Defendants failed to fully accommodate her disabilities

15 and treated her differently because of her disability.  *Id.*  As to her claim for damages under the

16 Rehabilitation Act, Plaintiff argues she requested several accommodations:  1) the ability to

17 submit work on a flexible schedule, 2) a grace period to submit assignments that did have rigid

18 due dates, and 3) that the penalties incurred for disability related difficulties asserts be lifted.  *Id.*

19 She argues that Defendants failed to give her all the reasonable accommodations she requested,

20 and that demonstrates a failure on their part to do a complete investigation.  *Id.*  As to her

21 retaliation claim, Plaintiff maintains that it should not be dismissed because after complaining

22 about disability-based discrimination, her program director threatened her.  *Id.*  Plaintiff argues

23 that her WLAD claim should not be dismissed because she was not provided services in

24

1  Defendants' program comparable to those provided to students without learning disabilities and

2  that her learning disability was a substantial factor causing the discrimination. *Id.* Plaintiff

3  argues that her CPA claim should not be dismissed because it is based on her WLAD claim, and

4  it is premature to dismiss either of these claims. *Id.*

5      This opinion will first address the motion to dismiss the claims against Laureate, then the

6  motion to dismiss the Rehabilitation Act claim, and lastly, the state law claims.

7  ## II.   DISCUSSION

8  ### A.  STANDARD FOR MOTION TO DISMISS

9      Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

10  legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

11  *v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken

12  as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d

13  1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

14  need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

15  to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

16  a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

17  (2007)(internal citations omitted).  "Factual allegations must be enough to raise a right to relief

18  above the speculative level, on the assumption that all the allegations in the complaint are true

19  (even if doubtful in fact)." *Id.* at 1965.  Plaintiffs must allege "enough facts to state a claim to

20  relief that is plausible on its face." *Id.* at 1974.

21  ### B.  CLAIMS AGAINST LAUREATE

22      "It is a general principle of corporate law deeply ingrained in our economic and legal

23  systems that a parent corporation (so-called because of control through ownership of another

24

corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)(*internal quotations omitted*).  "There is an equally fundamental principle of corporate law . . . that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Id.* at 62.  Absent express statutory language (Plaintiff points out none that applies here), state corporate law and common law principles of liability apply in determining whether a corporate veil should be pierced even where a Plaintiff asserts federal claims.  *See generally Bestfoods*, at 63 (holding that where a federal statute gives no indication to the contrary, state corporate law and common law principles of liability apply).  Under Washington law, the corporate veil is only pierced in exceptional circumstances, for example, where recognition of a corporate entity "would aid in perpetrating a fraud or result in a manifest injustice." *Truckweld Equip. Co. v. Olson*, 26 Wash. App. 638, 644, 618 P.2d 1017, 1021 (1980).

In Washington, "to pierce the corporate veil and find a parent corporation liable, the party seeking relief must show that there is an overt intention by the corporation to disregard the corporate entity in order to avoid a duty owed to the party seeking to invoke the doctrine." *Minton v. Ralston Purina Co.,* 146 Wash. 2d 385, 398 (2002)(*citing Morgan v. Burks*, 93 Wash.2d 580, 587, 611 P.2d 751 (1980)).  Typically, "a party must show that the corporation manipulated the entities in order to avoid the legal duty." *Id.*

The First Amended Complaint alleges only that Laureate is the parent company of Walden University.  Dkt. 7.

Defendants' motion to dismiss claims asserted against Laureate (Dkt. 13) has merit. Plaintiff has failed to allege any facts that there was an "overt intention" by Laureate to disregard

1   the parent-subsidiary relationship in order to avoid a legal duty.  There is no allegation that

2   Laureate "manipulated" the corporate form to avoid a legal duty.  Plaintiff's argument that an

3   employee of Walden "fraudulently induced her to enroll in Defendants' program to their

4   financial benefit" is insufficient.

5          The Ninth Circuit, however, has "adopted a generous standard for granting leave to

6   amend from a dismissal for failure to state a claim." *Lacey v. Maricopa County*, 693 F.3d 896,

7   926 (9th Cir. 2012).  "A district court should grant leave to amend even if no request to amend

8   the pleading was made, unless it determines that the pleading could not possibly be cured by the

9   allegation of other facts." *Id. (internal quotation and citation omitted)*.

10         The Court cannot yet say that the Plaintiff's claims against Laureate could not possibly be

11  cured by the allegation of other facts.  Accordingly, Plaintiff, should be afforded an opportunity,

12  if she chooses, to amend her Amended Complaint to plead sufficient facts to make her claim

13  against Laureate, on or before November 6, 2015.  Defendants' motion to dismiss claims

14  asserted against Laureate should be renoted for November 6, 2015.

15         **C.  REHABILITATION ACT CLAIMS**

16         Defendants move to dismiss the Rehabilitation Act based claims, arguing that Plaintiff

17  has failed to plead that she was discriminated against "solely" because of her disability and that

18  she failed to plead intentional discrimination which is required for monetary damages under the

19  Act.  Dkt. 13.  As to her retaliation claim under the Rehabilitation Act, Defendants assert that she

20  failed to allege an adverse action or causal link to an adverse action.  Dkt. 13.

21              1.  Solely Because of Disability and Monetary Damages

22         To state a claim under §504 of the Rehabilitation Act, a plaintiff must allege that:  (1)

23  they are an individual with a disability; (2) they are otherwise qualified to receive the benefit; (3)

24

ORDER ON MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT- 12

1    they were denied the benefits of the program solely by reason of their disability; and (4) the

2    program receives federal financial assistance.  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135

3    (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).  "[A] public entity can be liable

4    for damages under § 504 if it intentionally or with deliberate indifference fails to provide

5    meaningful access or reasonable accommodation to disabled persons."  *Mark H. v. Lemahieu*,

6    513 F.3d 922, 938 (9th Cir. 2008).  Deliberate indifference requires: (1) "knowledge that a harm

7    to a federally protected right is substantially likely, and" (2) "a failure to act upon that the

8    likelihood."  *Duvall*, at 1139.

9          For purposes of this motion, Defendants do not dispute that Plaintiff has a disability, she

10   was "otherwise qualified to receive the benefit" of their services, or that they receive federal

11   funds.

12         Defendants' motion to dismiss Plaintiff's Rehabilitation Act claim (Dkt. 13) should be

13   denied.  Plaintiff has sufficiently plead that she was denied the benefits of the program solely by

14   reason of her disability.  Plaintiff points out that she has alleged that Defendants penalized her,

15   forced her to re-do work, and criticized her due to her learning disabilities.  Dkt. 16.  She asserts

16   that Defendants failed to fully accommodate her disabilities and treated her differently because

17   of her disability.  *Id.*

18         Defendants' motion to dismiss Plaintiff's claim for monetary damages under

19   Rehabilitation Act should also be denied.  Plaintiff has sufficiently alleged the first element of

20   the "deliberate indifferent test," that Defendants had knowledge "that a harm to a federally

21   protected right is substantially likely" when she alleged she contacted Walden University's

22   Disability Services Office and informed them of her need for an accommodation.  *Duvall*, at

23   1139 (holding that when the plaintiff has alerted the public entity to their need for

24

ORDER ON MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT- 13

1  accommodation, the public entity is on notice that an accommodation is required, and the

2  plaintiff has satisfied the first element of the deliberate indifference test).

3      As to the second element of the "deliberate indifferent test," Plaintiff's allegations are

4  sufficiently plead that the Defendants failed "to act upon that likelihood." "The second element

5  is satisfied if the entity's failure to act is a result of conduct that is more than negligent, and

6  involves an element of deliberateness." *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir.

7  2002)(*internal quotations omitted*).  A public entity's duty on receiving a request for

8  accommodation is "to undertake a fact-specific investigation to determine what constitutes a

9  reasonable accommodation," considering the "particular individual's need when conducting its

10  investigation into what accommodations are reasonable." *Duvall*, at 1139.  "[P]rimary

11  consideration to the requests of the individual with disabilities" is to be given. *Id.* (*internal

12  citation and quotation omitted)*. "Reasonable accommodation does not require an organization to

13  make fundamental or substantial alterations to its programs," *Mark H. v. Hamamoto*, 620 F.3d

14  1090, 1098 (9th Cir. 2010), or, in the case of a university, to its academic standards, *Wong v.

15  Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999), *as amended* (Nov. 19, 1999).

16      As to her claim for damages under the Rehabilitation Act, Plaintiff argues she requested

17  several accommodations:  1) the ability to submit work on a flexible schedule, 2) a grace period

18  to submit assignments that did have rigid due dates, and 3) penalties incurred for disability

19  related difficulties asserts be lifted.  Plaintiff's Amended Complaint acknowledges that

20  Defendants gave her additional time to complete her assignments as an accommodation for her

21  disabilities, in accord with her request.  Plaintiff argues that Defendants failed to give her the

22  accommodation of the ability to submit work on a flexible schedule and for a lifting of the

23  penalties incurred as a result of her disabilities.  Plaintiff asserts that she pled that the

24

ORDER ON MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT- 14

1    accommodations she was given were not sufficient for her to be successful.  Defendant raises

2    several arguments regarding whether these accommodations are "reasonable" given Plaintiff's

3    disabilities, argues that Dr. Cox did offer Plaintiff an opportunity to turn in late assignments with

4    no penalty, and that despite an invitation from Disability Services, Plaintiff did not further

5    inform them for the need for further accommodation.  While these arguments may ultimately

6    carry weight, at this stage in the proceedings, Plaintiff's claim should not be dismissed.

7                      2.   Adverse Action and/or Causal Link

8              Although it does not have its own provision regarding retaliation, Section 504 of the

9    Rehabilitation Act "incorporates the anti-retaliation provision of Title VI of the Civil Rights Act

10   of 1964." *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 825 (9th Cir. 2009).  The

11   anti-retaliation provision of Title VI is set forth in the implementing regulations, and provides:

12            No recipient or other person shall intimidate, threaten, coerce, or discriminate
              against any individual for the purpose of interfering with any right or privilege
13            secured by section 601 of the Act or this part, or because he has made a
              complaint, testified, assisted, or participated in any manner in an investigation,
14            proceeding or hearing under this part.

15   *Id.* (*citing* 34 C.F.R. § 100.7(e)).  A prima facie case of retaliation under the Rehabilitation Act

16   "requires a plaintiff to show: '(1) involvement in a protected activity, (2) an adverse [] action and

17   (3) a causal link between the two.'" *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887

18   (9th Cir. 2004)(*quoting Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir.2003).  As to the

19   causal link, "the plaintiff must present evidence 'adequate to create an inference that an [adverse

20   action] was based on an illegal discriminatory criterion.'" *Id.*   (*quoting O'Connor v. Consol.*

21   *Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  In other words, Plaintiff must establish a link

22   between her request for, and use of, a reasonable accommodation and complaints regarding her

23   treatment as a result of her disability (her protected activity) and an adverse action.

24

1    Defendants' motion to dismiss Plaintiff's claim for retaliation under the Rehabilitation

2    Act (Dkt. 13) has merit.  Plaintiff has failed to plead an adverse action taken against her as a

3    result of a engaging in a protected activity under the Act.  An adverse action must be "non-

4    trivial" and deter a reasonable person from engaging in a protected activity.  *Brooks v. City of*

5    *San Mateo,* 229 F.3d 917, 928 (9th Cir 2000).  Plaintiff complains that Dr. Cox and Dr. Gallaher

6    criticized her work product, Dr. Cox did not accept certain of her assignments, and that Dr. Perry

7    cautioned her to remain professional in her discussions about her professors.  None of these

8    actions can reasonably be categorized as any more than trivial, particularly considering the

9    setting:  Plaintiff was a Ph.D. candidate.  This is especially true where Plaintiff did not take

10   advantage of the offers to pursue a grade appeal or further inform the University's Disability

11   Services of her need for more accommodation.  Further, in addition to failing to identify an

12   adverse action, Plaintiff has failed to plead a causal link between any protected activity and an

13   adverse action.  This claim should be dismissed.

14       As was the case with Plaintiff's claims against Laureate, Plaintiff should be permitted to

15   amend her First Amended Complaint, if she wishes, to attempt to properly plead this claim.

16   *Lacey,* at 926.  The Court cannot yet say that the Plaintiff's claim for retaliation could not

17   possibly be cured by the allegation of other facts.  Accordingly, Plaintiff, should be afforded an

18   opportunity, if she chooses, to amend her Amended Complaint to plead sufficient facts to make

19   her retaliation claim, on or before November 6, 2015.  Defendants' motion to dismiss Plaintiff's

20   retaliation claim should be renoted for November 6, 2015.

21       **D.  WLAD CLAIM**

22       The elements of a *prima facie* claim of discrimination in a place of public

23   accommodation under the WLAD are: "(1) the plaintiff is disabled; (2) defendant's establishment

24

1   is a place of public accommodation; (3) disabled persons are not provided services comparable to

2   those provided nondisabled persons by or at the place of public accommodation; and (4) the

3   disability was a substantial factor causing the discrimination." *Duvall v. Cnty. of Kitsap*, 260

4   F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). "The WLAD

5   differs from Title II of the ADA and § 504 of the Rehabilitation Act in that it does not require a

6   showing of intentional discrimination in suits for money damages." *Id.* at 1136, n. 10.

7          Defendants' motion to dismiss Plaintiff's WLAD claim should be denied.  Defendant

8   does not dispute that Plaintiff is disabled and that it is a place of public accommodation under the

9   WLAD.  At this stage in the litigation, Plaintiff has sufficiently pled that she was not provided

10  the services comparable to nondisabled persons when she alleged she requested accommodations

11  that were not given her.  She has further sufficiently pled that her learning disabilities were a

12  substantial factor in causing the discrimination.

13  **E.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

14         In order to survive a motion to dismiss a Washington claim for intentional infliction of

15  emotional distress, a Plaintiff must allege:  "(1) extreme and outrageous conduct, (2) intentional

16  or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional

17  distress.'" *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wash.2d 820, 355 P.3d 1100, 1110 (2015)

18  (*internal quotations and citations omitted*).  Although ultimately a jury question, "the court

19  makes the initial determination of whether reasonable minds could differ about whether the

20  conduct was sufficiently extreme to result in liability." *Id.*

21         Defendants' motion to dismiss this claim (Dkt. 13) has merit.  Plaintiff has not pled

22  sufficiently extreme or outrageous conduct to result in liability.  "To establish extreme and

23  outrageous conduct, a plaintiff must show that the conduct was so outrageous in character, and

24

1   so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

2   atrocious, and utterly intolerable in a civilized community." *Trujillo,* at 1110.  Plaintiff's claim

3   for intentional infliction of emotional distress should be dismissed.

4        The Court cannot yet say that the Plaintiff's intentional infliction of emotional distress

5   claim could not possibly be cured by the allegation of other facts.  Accordingly, Plaintiff should

6   be afforded an opportunity, if she chooses, to amend her Amended Complaint to plead sufficient

7   facts to make her claim, on or before November 6, 2015.  Defendants' motion to dismiss this

8   claim should be renoted for November 6, 2015.

9   **F.  CPA CLAIM**

10        In order to make a claim under the Washington CPA, plaintiffs must allege: (1) an unfair

11   or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public

12   interest; (4) causes injury to the plaintiffs' business or property; and (5) causation.  *Hangman*

13   *Ridge Training Stables v. Safeco Title Ins. Co,* 105 Wn.2d 778, 780 (1986).

14        Defendants' motion to dismiss Plaintiff's CPA claim should be denied.  Defendants urge

15   dismissal of this claim as it is derivative of Plaintiff's claim under the WLAD, and since the

16   WLAD claim should be dismissed, so should the CPA claim.  At this stage, the WLAD claim

17   should not be dismissed, and so Plaintiff's CPA claim should not be dismissed.

18          **III.**     **ORDER**

19       Therefore, it is hereby **ORDERED** that:

20   Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 13) is:

21       -   **DENIED** as to Plaintiff's claims under the Rehabilitation Act for damages, and

22          under the WLAD and CPA; and

23

24

1       -  **RENOTED** as to Plaintiff's claims against Laureate Education, claim for

2          retaliation under the Rehabilitation Act, and claim for intentional infliction of

3          emotional distress;

4       o  Plaintiff may, if she chooses, amend her First Amended Complaint to plead

5          sufficient facts to make these claims, on or before **November 6, 2015**.

6          Defendants' motion to dismiss these claims should be renoted for **November**

7          **6, 2015**.

8       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

9  to any party appearing *pro se* at said party's last known address.

10      Dated this 28th day of October, 2015.

11

12

                                   ROBERT J. BRYAN

13                               United States District Judge

14

15

16

17

18

19

20

21

22

23

24